## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Kathy E., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 20-cv-50193 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff's motion for summary judgment [16] is granted and the Commissioner's motion for summary judgment [24] is denied. The Commissioner's decision is remanded for further consideration consistent with this opinion.

## BACKGROUND

### A. Procedural History

On November 17, 2016, Plaintiff Kathy E. ("Plaintiff") filed an application for Social Security disability insurance benefits and an application for supplemental security income under Title II of the Social Security Act. R. 82. She alleged a disability beginning on January 16, 2016. *Id.* The Social Security Administration ("Commissioner") denied her applications on February 3, 2017, and upon reconsideration on June 20, 2017. R. 97–101, 107–09. Plaintiff filed a written request for a hearing on June 25, 2017. R. 112–113. On October 4, 2018, a hearing was held by Administrative Law Judge ("ALJ") Jessica Inouye where Plaintiff appeared and testified. R. 12–57. Plaintiff was represented by counsel. An impartial vocational expert also appeared and testified. *Id.*

On January 30, 2019, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits and supplemental security income. R. 82–92. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1–4. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [7]. Now before the Court are Plaintiff's motion for summary judgment [16] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [24].

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

B.  Medical Background[2]

According to the medical records provided, on September 16, 2016, Plaintiff underwent a lumbar spine fusion surgery at Swedish American Hospital to address the condition of her lower spine. R. 407. For the remainder of 2016, Plaintiff regularly received physical therapy at Rockford Orthopedic Rehab Roxbury and saw Brian Braaksma, M.D., for post-operative examinations of her lumbar spine. R. 378–408; 454–526.

On December 23, 2016, state-agency medical consultant James LaFata, M.D., reviewed Plaintiff's medical records. He did not examine Plaintiff and did not review any medical evidence received after December 20, 2016. Dr. LaFata found that Plaintiff suffered from a spine disorder and fibromyalgia. R. 59–61. Determining that Plaintiff was "doing ok" post fusion, her lumbar range of motion was limited, and that she had not started physical therapy, Dr. LaFata opined that Plaintiff's statements regarding her symptoms were only "partially consistent" with the medical evidence. R. 61. As to Plaintiff's residual functional capacity, Dr. LaFata found that Plaintiff could occasionally lift or carry up to 20 pounds, frequently lift or carry 10 pounds, and could stand and/or walk for about 6 hours in an 8-hour workday. R. 62–63. Regarding postural limitations, Dr. LaFata found that Plaintiff could never climb ladders or ropes and could only occasionally crouch or stoop. R. 63.

On April 25, 2017, Plaintiff visited Brian J. Foster, M.D., complaining of hand pain and thumb-locking. R. 44. Dr. Foster found that Plaintiff was "[a]ble to make full composite fist without scissoring" but suffered from pain and tenderness which while bilateral was worse in her left hand. R. 606. Upon reviewing x-rays, Dr. Foster determined that that degenerative changes were present in the thumb CMC and other joints in both hands. R. 606. Dr. Foster assessed that Plaintiff suffered from paresthesia of skin, unilateral secondary osteoarthritis of the first carpometacarpal joint in both hands, and trigger thumb on her left hand. *Id*. Dr. Foster also advised Plaintiff that he suspected she suffered from peripheral nerve compression which could cause potential permanent problems and require surgery. *Id*.

On May 1, 2017, Plaintiff saw Dr. Braaksma, for a six-month post operative check-up regarding the surgery on her lumber spine. R. 602. Dr. Braaksma noted that Plaintiff had a limited lumbar range of motion secondary to the surgery and minimal lower back pain. *Id*. He concluded that she could "resume all activities without restriction." R. 603.

On May 11, 2017, Plaintiff again saw Dr. Foster to discuss the condition of her hands. Dr. Foster found her symptoms to be the same as on the previous visit and proceeded to treat the condition in her left hand by providing a steroid injection. R. 598. On May 31, 2017, an EMG was taken of Plaintiff's bilateral upper extremity which provided no evidence of peripheral nerve compression. R. 599–60.

On June 6, 2017, Plaintiff saw K.P. Ramchandani M.D., for a consultative examination. Plaintiff described suffering from pain in her lumbar spine and throbbing headaches. R. 554. Dr. Ramchandani noted that in addition to a record of suffering from disc disease, fibromyalgia, and

---

[2] The Court summarizes Plaintiff's medical history that is relevant to this appeal. This section does not represent Plaintiff's entire medical history or the ALJ's complete review.

other conditions, Plaintiff had been diagnosed in April 2017 with bilateral trigger thumbs. R. 553. In summarizing Plaintiff's surgical history, Dr. Ramchandani described Plaintiff's discectomy and lumbar spine fusion but not any surgical procedures related to Plaintiff's hands. R. 554.

On June 8, 2017, Plaintiff saw Dr. Foster and Valerie McCannon, PA-C, for her bilateral hand pain. R. 594. Plaintiff reported that while her condition had improved since she received the injection in her left hand in May, she continued to suffer from pain radiating from her thumbs to her wrists. *Id*. Dr. Foster performed a steroid injection on her right hand. R. 595.

On June 17, 2017, state-agency medical consultant Vidya Madala, M.D., reviewed Plaintiff's medical records. She did not examine Plaintiff or review any medical evidence received after June 12, 2017. R. 69–71. She did not review the treatment records from Plaintiff's June 8 visit with Dr. Foster. *Id*. Dr. Madala noted Plaintiff's September 2016 lumbar fusion and the findings of Dr. Ramchandani's June 6 consultative examination. R. 74. Dr. Mandala found that Plaintiff suffered from a discogenic and degenerative disorder of the back, fibromyalgia, heart disease, and hypertension. R. 72–73. She adopted Dr. LaFata's assessment that Plaintiff's symptom allegations were only "partially consistent" with the medical evidence. R. 73. As to Plaintiff's residual functional capacity, Dr. Madala made the same findings as Dr. LaFata regarding Plaintiff's exertional limitations and opined that Plaintiff had a broader set of postural limitations. R. 74–75. Dr. Madala found that Plaintiff could occasionally stoop and climb ladders or ropes and could frequently kneel, crouch, crawl, and climb of ramps or stairs. *Id*.

On July 18, 2017, Plaintiff requested an urgent appointment due to lower back pain which made it difficult for her to stand. R. 592–93. On July 19, 2017, Plaintiff saw Pradeep Raju, M.D., and described symptoms similar to those preceding her 2016 surgery. R. 588. On July 21, 2017, Plaintiff saw Dr. Braaksma and described a constant radiation of pain through her entire back and upper legs. R. 585. Dr. Braaksma found that an MRI of Plaintiff's lumbar showed no significant abnormalities. R. 586. Dr. Braaksma determined that Plaintiff showed symptoms of facet arthropathy and join inflammation. *Id*.

On August 10, 2017, Plaintiff again saw McCannon for her bilateral hand pain. R. 581. McCannon reported that Plaintiff's condition remained about the same as at the June 8 visit. *Id*. McCannon found left thumb triggering, tenderness, and CMC joint compression causing pain in both hands. R. 581–82. McCannon discussed other treatment options with Plaintiff after determining that the steroid injection in her right hand had only been beneficial for two weeks following the injection. R. 582. McCannon recommended that Plaintiff undergo a surgical pulley release on her left thumb, since her trigger thumb condition persisted despite the injection. R. 583. Plaintiff agreed to the left thumb surgery and on further consultation with McCannon also agreed to surgical intervention to treat the first carpometacarpal joint on her left hand. *Id*.

On September 8, 2017, Plaintiff underwent surgery which consisted of a left trigger thumb release and left thumb CMC joint arthroplasty. R. 574. Dr. Foster observed on September 21, that Plaintiff suffered pain in her left CMC joint and lower forearm but was "doing better since the surgery." R. 574. On October 19, Dr. Foster noted that Plaintiff's condition continued to improve. R. 571. Dr. Foster noted that Plaintiff was to avoid lifting with her left hand until further notice. R. 572. On November 16, McCannon advised Plaintiff to lift no more than five pounds with her

left hand. R. 703. While recovering from the surgery, Plaintiff received rehabilitation treatment at Rockford Orthopedic Rehab Roxbury. R. 562–70.

On December 14, 2017, Plaintiff saw McCannon who noted that Plaintiff's condition had improved since November 16. R. 678. While able to make a fist, Plaintiff continued to suffer pain and tenderness and McCannon observed active thumb opposition to the joint of Plaintiff's small finger. *Id*. McCannon stated that there were no further work restrictions on Plaintiff's use of her left hand. R. 679. McCannon also found that the thumb arthritis in Plaintiff's right hand persisted despite treatment with severe symptoms which affected her quality of life, ability to perform activities of daily life, and restricted her ability to work with her right hand. *Id*. After discussing treatment options with McCannon, Plaintiff opted for surgical intervention to address the condition of her right hand. R. 679–80.

On January 26, 2018, Plaintiff underwent a CMC joint arthroplasty surgery on her right thumb. R. 765. While recovering from this surgery, Plaintiff received rehabilitative treatment and occupational therapy at Rockford Orthopedic Rehab Roxbury. R. 753–60; 768–77. On April 3, Plaintiff saw Dr. Foster who found that she was doing "a little worse" in comparison to her visit on March 6. R. 765. Dr. Foster found her able to make a full composite first without scissoring but with active thumb opposition to the small finger and tenderness. *Id*. He recommended that she continue occupational therapy. R. 766. On May 3, 2018, Plaintiff returned to Dr. Foster after another month of occupational therapy. R. 740. Dr. Foster noted that Plaintiff described continued pain and displayed wrist swelling and thumb tenderness. R. 740. Plaintiff continued to receive occupational therapy. R. 724–39. When Plaintiff returned to Dr. Foster on June 12, Dr. Foster noted that Plaintiff's condition had remained "about the same" as her May 3 visit. R. 721. Dr. Foster treated Plaintiff with a steroid injection in her right thumb. R. 722.

On September 4, 2018, Plaintiff again saw Dr. Foster, who noted that Plaintiff's condition was approximately the same as on June 12. R. 718. Dr. Foster found that Plaintiff continued to have pain in her thumb even after the steroid injection. R. 719. Since Plaintiff also complained of pain in her right wrist, Dr. Foster recommended that Plaintiff undergo an MRI so he could determine if she had an occult mass or suffered from a ligament or tendon injury. R. 719. On September 18, Plaintiff saw Dr. Foster to discuss the results of the MRI performed on her right wrist. R. 792. Dr. Foster noted that Plaintiff continued to complain of pain and swelling in her thumb and that her condition was "about the same" as on September 4. *Id*. Hyun Sung, M.D. found that the MRI showed "[m]ild thickening and edema of the scapholunate ligament," "[p]rominent spurring and low-grade marrow edema at the 1st metacarpal base," "[m]oderate to high-grade edema in the lunate," a "prominently thickened" distal FCR tendon, and "mild dorsal wrist capsular swelling." R. 795. Dr. Foster interpreted the MRI results as showing edema without mass and recommended further testing and a referral to rheumatology. R. 793. Suspecting peripheral nerve compression, Dr. Foster recommended that Plaintiff undergo an additional EMG. *Id*.

C.    The ALJ's Decision

The ALJ conducted the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since January 15, 2016, when Plaintiff alleges her disability arose. R. 84. At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease status/post fusion, degenerative joint disease of the right thumb joint, and degenerative joint disease of the left thumb joint." *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work except that she can only occasionally climb ramps and stairs; never climb ladders, ramps, or scaffolds; only occasionally stoop, crouch, kneel, and crawl; and only frequently perform gross and fine manipulation with her right upper extremity. R. 86. In reaching this finding, the ALJ afforded "significant weight" to both Dr. LaFata and Dr. Madala's opinions determining that they were "consistent with the general pattern of evidence contained in the hearing level record," while stating that she further adjusted the RFC based on the "subsequent hearing level evidence." R. 90. At step four, the ALJ found that Plaintiff could perform her past relevant work as a bartender. R. 91. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from January 15, 2016, to January 30, 2019, the date of the decision. R. at 92.

## STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). "An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). Nor can ALJs "succumb to the temptation to play doctor and make their own independent medical findings," *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), or "rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). The court will only reverse the decision of the ALJ "if the record compels

a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted).

## DISCUSSION

Plaintiff argues that this matter should be remanded because the ALJ's determination of Plaintiff's residual functional capacity was not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred in giving significant weight to the opinions of non-examining state agency medical consultants who did not receive the treatment records for her hand conditions and by evaluating the medical evidence of Plaintiff's hand conditions herself without the benefit of medical expert scrutiny. As noted above, the non-examining state-agency medical consultants submitted their reports in December of 2016 and June of 2017.[3] Plaintiff's medical records show that later in 2017 and in 2018, Plaintiff sought treatment for pain in both of her hands and received treatment for these conditions which included two surgeries. These records were not reviewed by the state agency medical consultants. The ALJ erred in relying on outdated state agency consultants' opinions and her own lay analysis, rather than seeking medical expert review of these records.

"An ALJ may rely on a reviewing physician's assessment unless later evidence containing new, significant medical diagnoses 'changed the picture so much' that it reasonably could have changed the reviewing physician's opinion." *Massaglia v. Saul*, 805 F. App'x 406, 410 (7th Cir. 2020) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)); see also *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (quoting *Moreno*, 882 F.3d at 728) ("ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'"). If the outdated medical opinion cannot be relied upon, an ALJ "may not 'play[] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)); *see Moreno*, 882 F.3d at 728 (finding that the ALJ impermissibly examined new treatment notes herself to conclude that plaintiff's mental health had improved).

The Commissioner argues generally that an ALJ can give significant weight to state-agency medical consultant RFC opinions despite evidence provided after their review. [24, at p. 8]. However, none of the three cases cited by the Commissioner in making this argument are applicable to the facts at issue here. See *id*. In *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *15 (N.D. Ill. Dec. 19, 2019), the court found that since "[t]he opinion of a non-examining state agency consultant is the type of medical evidence an ALJ may rely" an ALJ is not required to seek out medical opinions from a claimant's physicians. Here, Plaintiff does not

---

[3] In her brief, Plaintiff argues that "most strikingly" Dr. Ramchandani's examination of Plaintiff was not reviewed by the non-examining state agency physicians. [16, at p. 10]. As the Commissioner argues in her brief, Dr. Madala did review the record of Dr. Ramchandani 's consultative examination. [*See* 24, at p. 6]. While Plaintiff argues that Dr. Ramchandani's examination of Plaintiff occurred on July 31, 2017, the record is clear that the examination occurred on June 6. R. 554. Dr. Ramchandani's license expired on July 31, 2017. R. 556. In her opinion, Dr. Mandala refers to observations made by Dr. Ramchandani at the June 6 examination. R. 74; see R. 554–55.

challenge reliance on non-examining state-agency medical consultants generally, but only the ALJ's reliance on opinions provided without reviewing the new evidence. In *Wojciech B. v. Saul*, No. 19 C 362, 2020 WL 3960997, at *8 (N.D. Ill. Jul. 13, 2020), the court found "the ALJ was permitted to rely on the reviewing physicians' opinions because the ALJ determined that they were consistent with subsequent exams." Here, the ALJ did not find that the state-agency medical consultants' opinions were consistent with the new evidence. Their opinions do not address Plaintiff's hand condition, a fact the ALJ herself seems to concede by finding that the opinions must be modified. In *Devon T. v. Saul*, No. 18 C 7004, 2020 WL 496609, at *11 (N.D. Ill. Jan. 30, 2020), the court found that the ALJ could rely on the reviewing state agency consultant opinion in question, because "[u]nlike in [*Lambert*, 896 F.3d 768] where the reviewing physician's opinion pre-dated surgeries and other degradation in pain, . . . there was no new or significant medical diagnoses that could have reasonably changed the reviewing physician's opinion." Here, the opinions in question preceded new medical diagnoses significant enough for the ALJ to include them as impairments in her decision and new surgeries to treat those diagnoses.

While the ALJ recognized the degenerative joint disease in both of Plaintiff's thumbs as severe impairments, these severe impairments are absent from the non-examining physicians' opinions. Dr. LaFata does not refer to any issue with Plaintiff's thumbs and Dr. Madala's opinion only states that Dr. Ramchandani noted bilateral trigger thumbs in his June 6, 2017 examination. R. 74. The Seventh Circuit has found that an ALJ errs by accepting "uncritically" the opinions of two state-agency medical consultants who did not examine the claimant and provided their opinions without the benefit of more recent treatment records documenting additional severe impairments. *See Thomas*, 826 F.3d at 960–61. In *Thomas*, the medical consultants provided their opinions in December 2010 and January 2011, but the claimant's hearing did not occur until October 2012. *Id*. at 956, 958. In the interim, beginning in early 2011, the claimant was diagnosed with and received treatment for fibromyalgia, degenerative changes in her lumbar spine, and left shoulder tendonitis. *Id*. at 956. The ALJ ultimately determined that the claimant suffered from Graves' disease, depression, and degenerative changes of the left shoulder and lumbar spine. *Id*. at 953, 958. The Seventh Circuit found that the ALJ erred in giving great weight to the medical consultants' opinions and finding them to be consistent with later medical evidence, while failing to compare them with treatment records from later in 2011 suggestive of greater restrictions. *Id*. at 960–61. The Seventh Circuit noted that the medical consultant's identification of Graves' disease as the claimant's "sole alleged physical impairment highlight[ed] the dated nature of the assessment." *Id*. at 960. Here as in *Thomas*, the state-agency medical consultants' opinions were provided without the benefit of effectively any treatment records for impairments found by the ALJ. The fact that Dr. Madala's opinion did not record the thumb conditions among Plaintiff's impairments or note the two surgeries performed to address those conditions with mixed results "highlight[s] the dated nature of the assessment." *See id*. at 960.

As the evidence provided after the state-agency medical consultants' review persuaded the ALJ to list additional impairments beyond those identified by Dr. Madala, it clearly "changed the picture so much' that it reasonably could have changed the reviewing physician's opinion." *See Massaglia*, 805 F. App'x at 410 (internal quotation marks omitted). Dr. LaFata and Dr. Madala did not err in omitting Plaintiff's hand conditions from their opinions. The medical record they reviewed simply did not contain the treatment records documenting those conditions. If it had,

their RFC opinions may have been different. As a result, the ALJ erred in granting significant weight to their opinions.

The Commissioner further contends that the ALJ's own review of the additional medical record was sufficient despite the lack of medical expert opinion.[4] While arguing against a general prohibition against ALJs independently evaluating medical evidence, the Commissioner concedes that in some cases ALJs do need medical opinions to fairly assess new evidence. [24, at p. 7–8]. This is one of those cases. The evidence post-dating the medical consultants' opinions was "new and potentially decisive," see *McHenry*, 911 F.3d at 871, and the ALJ should not have assessed it without the benefit of medical expert review.

The September 6, 2018 MRI results illustrate the ALJ's error. Dr. Sung interpreted the MRI results as showing spurring and low-grade marrow edema at the first metacarpal base of the right thumb, tendon thickening and swelling, and mild dorsal wrist swelling. R. 795. Rather than consult a medical expert to opine on whether the MRI results as interpreted by Dr. Sung were consistent with Plaintiff's alleged symptoms and would support further restrictions, the ALJ, if she assessed the MRI results, assessed them herself. The ALJ found that Plaintiff had "unchanged medical signs on physical examination related to her right hand" in September 2018 and stated that the laboratory findings in the record did not corroborate Plaintiff's alleged symptoms without specifically addressing the MRI. R. 89. "An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (*Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018)). *See Kemplen v. Saul*, 844 Fed. Appx. 883, 887 (7th Cir. 2021) (finding that an ALJ erred by not obtaining a medical opinion which include the 2017 MRI results that post-dated the 2016 state medical consultant's opinion to which he gave significant weight); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (finding that an MRI report showing greater spinal degradation and a malformation not present in the older MRI report reviewed by medical consultants was "new and potentially decisive medical evidence" and that the ALJ impermissibly "play[ed] doctor" by assessing it herself without the benefit of an medical expert).

The Court agrees with Plaintiff that the ALJ's RFC determination was reached without the benefit of a medical opinion assessing the "potentially decisive evidence" postdating the medical consultants' opinions. While the Court does not presume to know how to interpret the treatment records regarding Plaintiff's hand conditions, it is possible that this evidence could reasonably be interpreted by a medical professional to suggest that Plaintiff is more restricted in the use of her hands – potentially leading to a finding of disability. While the ALJ did refer to and weigh the

---

[4] In addition to crediting the state-agency medical consultants, the ALJ afforded "great weight" to the opinion of Physician Assistant McCannon expressed in her treatment notes restricting Plaintiff to lifting no more than five pounds with her left hand on November 16, 2017 and releasing her to work with restriction on December 14, 2017. R. 90. McCannon is not a medical doctor and operates under the supervision of Dr. Foster. R. 90. The ALJ discounted Dr. Foster's October 17, 2017 note restricting Plaintiff from lifting with her left hand as a temporary restriction limited to her surgical recovery. R. 91. Since these changing restrictions reflect Plaintiff's recovery from left hand surgery in 2017, even if McCannon's note regarding Plaintiff's lack of work restrictions in 2017 were found to constitute a medical opinion this opinion provides no information about the condition of Plaintiff's right hand which the ALJ found to warrant greater restriction than the left in her RFC determination. *See* R. 86.

evidence of Plaintiff's hand condition herself, by evaluating Plaintiff's hand conditions without the benefit of any medical expert opinion to support her assessment the ALJ impermissibly "played doctor." For these reasons, the Court finds that the ALJ did not support her RFC determination with substantial evidence. Because the Court finds that a remand is necessary, the Court need not consider Plaintiff's other arguments for remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [16] is granted and the Commissioner's memorandum in support of motion for summary judgment [24] is denied. The Commissioner's decision is remanded for further consideration consistent with this opinion.

Date: 11/03/2022                    ENTER:


                                    _Margaret J. Schneider_
                                    United States Magistrate Judge